IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:14-cv-01480-MA |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| $23,400 IN UNITED STATES CURRENCY, *in rem*, | |
| Defendant. | |

MARSH, Judge

Plaintiff, the United States of America, brings this civil forfeiture proceeding seeking the forfeiture of the Defendant *in rem* $23,400 in U.S. Currency. On October 30, 2014, Claimant Cesar Cruz-Reyes filed a Claim and Answer asserting that he is the owner of the currency. Claim (ECF No. 5); Answer (ECF No. 6). Currently before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 21). Claimant did not file an opposition to the Motion. For the reasons set forth below, this Court grants Plaintiffs Motion.

## **BACKGROUND**

The circumstances of the seizure of the Defendant *in rem* $23,400 in U.S. Currency is set forth in the Declaration of Jeremy Stinson, a Task Force Officer with the Drug Enforcement

Administration (DEA). *See* Compl. (ECF No. 1), Ex. A. In his Declaration, Stinson states that after intercepting telephone communications between Juan Orozco-Lopez and Ariel Salazar-Galindo suggesting drug activity, he obtained a warrant to search Salazar-Galindo's residence. *Id.*, Ex. A at 4-18. On March 19, 2014, members of the Clackamas County Inter-Agency Task Force and the Portland DEA executed the search warrant and seized, among other things, approximately one-half pound of methamphetamine and $23,400 in U.S. Currency. *Id.* at 18-20.

According to Stinson, Salazar-Galindo admitted to selling heroin and methamphetamine. *Id.* at 19-20. However, both Salazar-Galindo and his father Rosalino Salazar-Maceda (who also was present in the residence at the time of the search) stated that the $23,400 found in the residence was a loan from family friend Cesar Cruz-Reyes. *Id.* at 21. Stinson summarized the evidence and the statements concerning the alleged loan as follows:

> 45.   .... Ariel told me the money came from a $20,000 loan his father had received from a family friend named Cesar. Ariel told me the money was intended to start a business.
>
> 46.   After I was finished speaking with Ariel I asked Rosalino SALAZAR-MACEDA (Ariel's father) if he would be willing to speak with me. Rosalino agreed .... I asked Rosalino about the money we found in Ariel's room. Rosalino told me the money came from a personal loan a friend had given him the day before.
>
> 47.   I asked Rosalino if he had spent any of the loan his friend had given him[.] Rosalino told me he had spent some of the money already to re-pay a family member money owed on another loan, to make a payment on his black 2013 Nissan Altima, and to re-pay a loan company who had previously loaned him money. Rosalino estimated he had spent $10,000 of the $20,000 his friend had loaned him.
>
> 48.   Rosalino told me his son was holding onto the remaining $10,000 of the personal loan he had received from his friend. Rosalino told me the loan he had received from his friend was all in $100 denominations. I viewed the currency seized from Ariel's bedroom, and noted much of it was in $20 denominations an amount common in drug transactions.
>
> ....

> 53. On September 5, 2014, at about 1:30 p.m., I called CRUZ-REYES by phone . . . . Mr. CRUZ-REYES told me he had loaned the money to the family for a cleaning business. I asked Mr. CRUZ-REYES how much he loaned the SALAZAR family and he replied "$20,000", then corrected himself and slowly stated "$23,400" as if he was reading the number. Mr. CRUZ-REYES told me he gave the money to the family in cash which he withdrew from his personal Key Bank money market account . . . .
>
> . . . .
>
> 56. Mr. CRUZ-REYES told me the SALAZAR family was supposed to pay him back the money he loaned them starting six months after he gave them the loan and in the amount of $500 a month. . . .
>
> 59. . . . . CRUZ-REYES told me the loan was an agreement between himself and Ariel's father, though Ariel helped mediate the deal because CRUZ-REYES does not speak Spanish and Ariel's father, Rosalino Galindo-Salazar, does not speak English.

*Id.* at 21-25.

In his answers to Plaintiff's First Request for Special Interrogatories, Claimant similarly stated that the $23,400 was a "business loan for a HVAC and cleaning business." Mot. for Summ. J. (ECF No. 21), Att. 2 at 2. Claimant explained that the loan was interest free and made to "better the life" of the Salazar-Maceda family. *Id.*

## **STANDARDS**

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there 'is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislau V. Samaniego*, 835 F.3d 1159, 1162 (9th Cir. 2016) (*quoting* Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (internal quotations omitted).

In a civil forfeiture proceeding, the government may move for summary judgment on the basis that the claimant lacks standing. *Id.* at 1163 (*citing* Rule G(8)(c)(ii)(B) of the Supplemental

Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions)). To withstand a motion for summary judgment on the ground that the claimant lacks standing, a claimant cannot rely on mere allegations but rather must set forth by affidavit or other evidence specific facts from which a jury could reasonably find he or she has an ownership or possessory interest in the defendant *in rem*. *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012). "[A] claimant's bare assertion of an ownership or possessory interest, in the absence of some other evidence, is not enough to survive a motion for summary judgment." *Id.*

## **DISCUSSION**

Plaintiff moves for summary judgment on the basis that Claimant lacks standing to contest the forfeiture of the Defendant currency. A claimant seeking recovery of property subject to a civil forfeiture proceeding must demonstrate Article III standing by showing that he or she has a colorable interest in the property, which includes an ownership interest or a possessory interest in the specific property seized. *Id.* at 637-38; *United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d 1134, 1140 (9th Cir. 2008). Although the burden of demonstrating a colorable ownership interest is not a heavy one, federal courts have consistently held that *unsecured creditors* of the person whose property was seized lack a sufficient property interest to have standing to challenge the forfeiture. *United States v. $20,193.39 U.S. Currency*, 16 F.3d 344, 346 (9th Cir. 1994); *United States v. One Hundred Thirty-Three (133) U.S. Postal Serv. Money Orders Totaling $127,479.24 in U.S. Currency*, 496 F. Appx 723, 724 (9th Cir. 2012); *see also* 18 U.S.C. § 983(d)(6)(B)(i) (excluding "a person with only a general unsecured interest in, or claim against, the property or estate of another" from the definition of "owner"). The Ninth Circuit explains:

///

///

"Unlike secured creditors, general creditors cannot claim an interest in any particular asset that makes up the debtor's estate. For this reason, the federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property.

*$20,193.39 U.S. Currency*, 16 F.3d at 346.

It is undisputed that Claimant is an unsecured creditor under Oregon law because he was given no security interest as collateral for the loan. *See* Or. Rev. Stat. § 79.0102(ttt)(A) (defining "secured party" as "[a] person in whose favor a security interest is created or provided for under a security agreement."); Or. Rev. Stat. § 79.0203(2) (setting forth requisites of an enforceable security interest); *see also United States v. Real Prop. Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004) (nature of a claimant's ownership or possessory interest is governed by the law of the state where the interest arose). Claimant has offered no evidence in opposition to Plaintiff's Motion for Summary Judgment on the issue of standing. Accordingly, this Court grants Plaintiff's Motion for Summary Judgment on the basis that there is no genuine issue of fact as to whether Claimant lacks standing to assert a claim to the Defendant currency.

## CONCLUSION

Based on the foregoing, this Court grants Plaintiff's Motion for Summary Judgment (ECF No. 21). Plaintiff shall submit a proposed form of judgment.

IT IS SO ORDERED.

DATED this 25 day of May, 2017.

Malcolm F. Marsh
United States District Judge